# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## Myown Development Corporation v. Commonwealth.

### January 12, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Browning and
Chinn, JJ.

The opinion states the case.

*William Old,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

On September 29, 1932, Houston Bruce and his father, Het Bruce, representing themselves as residents of Chesterfield county, came to the office of McElroy Chevrolet Sales Corporation, in Petersburg, at which time Houston purchased a car for $655. The contract was an ordinary one

of conditional sale, guaranteed by the father; $250 was paid in cash and the balance was to be paid in fifteen monthly installments of $27 each. It was on the same day, for value, assigned to the Myown Development Corporation, of Charlottesville, Virginia, and was duly registered in the office of the Motor Vehicle Commissioner. Afterwards the car was seized when unlawfully transporting intoxicating liquors. Forfeiture proceedings were instituted. The finance company appeared and answered, setting up its lien and claiming to be an innocent holder for value. Its claim was not allowed, and the car was ordered to be sold.

By act of 1918 (Acts 1918, chapter 388, page 578, section 57), it was provided that when a vehicle is so captured it "shall be forfeited to the Commonwealth." Forfeiture overrode any claims of a lien-holder. *King* v. *Commonwealth*, 127 Va. 800, 102 S. E. 757.

This flat statutory forfeiture was found in practice to at times work unnecessary hardship, and was changed in 1922. See Acts 1922, chapter 345, pages 573, 586, which provided that whenever "* * * it shall appear to the satisfaction of the court from the evidence that the owner or lienor of such vehicle and team, automobile, boat or other conveyance was ignorant of the illegal use to which the same was put, and that such illegal use was without his connivance or consent, express or implied, and that such lienor has prior to the commission of such offense duly recorded in the county or corporation in which the debtor resides, the instrument creating such lien and that said innocent owner has perfected his title to the vehicle, if the same be an automobile, by proper transfer in the office of the Secretary of the Commonwealth, as provided by law, then such court shall have the right to relieve such owner or lienor from the forfeiture herein provided; provided, however, such lienor or innocent owner shall pay the costs incident to the capture and custody of such automobile or other vehicle and to the trial of said cause."

Sundry amendments were from time to time afterwards

made. In 1928 (Acts 1928, chapter 374, page 990), the law in its present form was written. That pertinent appears in Michie's Code, 1930, as section 4675 (28), par. i, where it is said:

. "If any such claimant be a lienor, and if it shall appear to the satisfaction of the court that the owner of the conveyance is a resident of the State of Virginia, or of the District of Columbia, and has perfected his title to the conveyance if it be a motor vehicle, prior to its seizure, or within ten days from the time same was acquired, and such owner a resident of Virginia, in the office of the Division of Motor Vehicles of the State of Virginia, and that such lienor was ignorant of the fact that such conveyance was being used for illegal purposes when it was so seized; that such illegal use was without such lienor's connivance or consent, express or implied; that at the time he acquired said lien he did not know, and had no reason to believe or suspect, that the owner of said conveyance had ever been guilty of, or was suspected of, violating any prohibition law, or that such owner intended to use, or contemplated using, or permitting any other person to use such conveyance for any unlawful purposes; and that he held a bona fide lien on said property and had perfected the same in the manner prescribed by law, prior to such seizure (if such conveyance be an automobile the memorandum of lien on the certificate of title issued by the Motor Vehicle Commissioner of Virginia on said automobile shall make any other recordation of same unnecessary), the court shall, by an order entered of record, establish said lien, * * *"

How should we deal with our anti-liquor laws? Designed to suppress a traffic exasperating and elusive, their purpose is to be remembered.

"The evil sought to be remedied must be considered, and unlike most legislation creating statutory crimes must be liberally construed." Grayson v. Commonwealth, 147 Va. 609; 136 S. E. 595, 596. Indeed, subsection 99 of Code, section 4675, expressly so declares. At the same time, this

construction must be fair. *Landers* v. *Commonwealth,* 126 Va. 780, 101 S. E. 778.

██ The discretion given by statute to trial judges in matters of forfeiture is wide but not unfettered, and must rest upon the record. *Mason* v. *Commonwealth,* 137 Va. 819, 120 S. E. 133.

██ The burden of proof is upon the claimant. Forfeiture is the rule and release therefrom is the exception. *Jones* v. *Commonwealth,* 141 Va. 459, 126 S. E. 238.

██ In this case, if we are to believe its agents, there was no actual knowledge. They had never heard of the purchaser. He said that he lived in Chesterfield county, and upon inquiry there appeared to be responsible. They did not know that he was, in fact, in business in Petersburg.

██ Without actual knowledge, are they charged with constructive knowledge?

Barham, a motor vehicle inspector, who seized the car, Belches, a special officer for Prince George county, and Lazenby, another special officer for that county, all testified that Bruce's reputation as a violator of these laws was bad. He had been sentenced to the penitentiary for assault, with intent to rob. There is no doubt as to how he stood in police circles, but the finance company, although it maintained an office in Petersburg, is not charged with such knowledge. It was not required to question the police or to examine the records of criminal courts. The reputation with which it can be charged is general reputation, and general reputation is that which is common knowledge in his community. *Chellis* v. *Chapman,* 125 N. Y. 214, 26 N. E. 308, 11 L. R. A. 784; *Smith* v. *Compton,* 67 N. J. L. 548, 52 Atl. 386, 388, 58 L. R. A. 480.

It does not appear from the evidence that Bruce's reputation was such that knowledge of it can be imputed to an ordinary business man in Petersburg. That, in the absence of actual knowledge, is necessary. Where a finance company is innocent it must be protected. *C. I. T. Corp.* v. *Commonwealth,* 153 Va. 57, 149 S. E. 523; *Commercial Credit*

*Co.* v. *Commonwealth,* 155 Va. 1033, 155 S. E. 689, 71 A. L. R. 904.

It is true that the statute declares that the lienor must have "perfected the same (the lien) in the manner prescribed by law." But time and again it appears that any claimant or lienor who is innocent is to be protected. Of course, we must harmonize these declarations if possible. A lienor who is the original creditor must register his lien, but if he is merely an assignee, there is nothing for him to do by way of protection except to take a proper assignment when his lien has been recorded, and the provision as to registration no more applies to him than it does to some non-resident owner. *Smith* v. *Commonwealth,* 141 Va. 490, 126 S. E. 236. It is also true that this makes it possible for a guilty vendor to convey good title to an innocent purchaser, but it was to protect innocent purchasers that the exception of 1922 was written into the statute.

This finance company had no actual knowledge, and no constructive knowledge which could put it upon notice, and so was required to make no independent investigation.

It follows that the judgment appealed from must be reversed.

*Reversed.*