# Richmond

UNIVERSAL C. I. T. CREDIT CORPORATION v. COMMONWEALTH OF VIRGINIA.

June 21, 1954.

Record No. 4222.

Present, All the Justices.

The opinion states the case.

*Sacks & Sacks* and *Bernard Glasser*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *G. Stanley Clarke, Assistant Attorney General*, for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

This is an appeal from a judgment forfeiting to the Commonwealth an automobile on which appellant had a lien, on the ground that it was being illegally used in the transportation of more than one gallon of alcoholic beverages. Code, §§ 4-56, 4-72. The automobile was owned by Willie M. Gorham, who did not appeal from the forfeiture.

The car was seized on April 4, 1953, by two police officers of the city of Norfolk. As they were driving north on Church street they saw Gorham place a large paper bag in the trunk of the car, which was parked in front of an A. B. C. store headed south. They turned around, saw the car being driven away, followed it a few blocks, stopped it and found in the trunk two paper bags, one containing eight pints of whiskey and the other five pints. They arrested Gorham, who was driving the car, and charged him with illegal transportation.

The officers testified that nobody got in or out of the car from the time it moved off until they stopped it; but Gorham testified that the five pints in one of the bags belonged to John Wiggins, who had put it in the trunk of the car at the same time Gorham had put the eight pints there. Gorham said that Wiggins got out of the car when he stopped at a signal light and was to get his package after Gorham parked the car. Wiggins went to the police station after Gorham was taken there and claimed that the five pints belonged to him. Gorham offered but was not allowed to prove that on his trial in police court on the charge of illegal transportation he was acquitted.

Section 4-56 (i) of the Code deals with the rights of an innocent lienor holding a lien against a vehicle in which alcoholic beverages are illegally transported. It provides that if it shall appear "to the satisfaction of the court" that the owner has perfected his title in the prescribed time, and that the lienor was ignorant of the fact that the vehicle was being used for illegal purposes when it was seized, that the illegal use was without the lienor's connivance or consent,

express or implied, that the lienor held a bona fide lien on the vehicle and had perfected it in the manner prescribed by law prior to the seizure, the court shall establish the lien.

It is further provided that if the owner was in possession of the vehicle at the time it was seized, as was the case here, and the illegal use was with his knowledge or consent, the forfeiture shall be final as to his interest and equity.

The Commonwealth admits that prior to the seizure Gorham had perfected his title and that the appellant's lien had been perfected in the manner prescribed by law. The controlling issue is whether the appellant was an innocent lienor within the definition of § 4-56 (i); *i.e.*, that it was ignorant of the illegal use, and that such illegal use was without its connivance or consent, express or implied.

On this issue the burden of proof is on the lienor. "Forfeiture is the rule and release therefrom is the exception." *Myown Development Corp.* v. *Commonwealth*, 159 Va. 1004, 1008, 167 S. E. 374, 375; *Bandy* v. *Commonwealth*, 185 Va. 1044, 1052, 41 S. E. (2d) 71, 74.

The automobile was sold to Gorham on November 3, 1952, by D. H. Burlage & Company through D. H. Burlage, a partner, who took a credit statement from Gorham to the effect that he had been employed as a longshoreman for 13 years, giving his address as "Chinese Corner Rt. 2 Box 99A Glenrock," the number of his local union and his badge number, stating that his income was $60 a week, and giving a furniture company in the city as reference. Gorham testified that Route 2, Box 99A was his mother's address and his old address, but he lived at Chinese Corner where he had a store designated as Yellow Front Store but he had no box or mailing address there.

The sellers took from Gorham a conditional sales contract for a balance of $1,744.32, which they assigned to the appellant, informing the appellant that they had had previous dealings with Gorham on two cars which he had paid for without trouble. They had verified on the former occasions that Gorham was carried on the longshoremen's

rolls, but not on this occasion because they were assigning the contract without recourse. They also verified that Gorham had a charge account with the furniture company. Otherwise they made no independent investigation because, Burlage testified, they had an active file on Gorham. Burlage also testified that they had no knowledge nor any reasonable cause to believe that the automobile would be used for any illegal purpose.

An investigation clerk of the appellant made an investigation of Gorham and prepared a customer's statement which was filed in evidence. She testified that she called the longshoremen's union and was told that Gorham was a longshoreman. The statement indicated that an inquiry was made of the Retail Merchants' Association of Norfolk but the witness was not sure she had made that call. Her investigation showed this to be a satisfactory account, which she said referred to its financial aspect. She delivered the customer's statement to the credit manager and the assignment of the conditional sales contract was accepted. The balance due at the time of the hearing was $1,271.23 and the fair market value of the car at that time was a maximum of $1,100. The credit manager testified that the investigation and information disclosed nothing to indicate that the automobile would be put to illegal use and that such use was without the connivance or consent of his company.

The Commonwealth does not argue that there was actual connivance or consent. Its contention is that the investigation so made was only superficial, concerned primarily if not entirely with the credit risk; that in fact Gorham had a general reputation of being a bootlegger; that a proper investigation would have disclosed that fact and that appellant is charged with knowledge of it. In oral argument the assistant attorney general correctly stated that the real question was whether the appellant was bound by the alleged general reputation of Gorham.

The Commonwealth introduced two witnesses to prove Gorham's reputation. One was an investigator for the

United States Alcohol Tax Unit, who testified that he had known Gorham approximately two years (he was testifying on June 2, 1953); that Gorham operated the Yellow Front Store at Chinese Corner, in Princess Anne county; that he was convicted in that county on May 29, 1952, for possession of illegal whiskey; that he had a reputation of being a bootlegger and had that reputation on November 3, 1952, the date of his purchase of the automobile. The other was an investigator for the Virginia Alcoholic Beverage Control Board, who testified that he had known Gorham approximately two and a half years; that he was convicted in Princess Anne county on January 25, 1952, for possession of illegal whiskey. He was asked whether he knew Gorham's general reputation in connection with the alcoholic beverage control law. He replied, "He is a known violator of the ABC Law," and "to my knowledge" had had that reputation approximately two and a half years. An investigator for the Commonwealth's attorney's office testified that an inventory of the visible stock of goods at Gorham's store would not exceed $50.

In *Myown Development Corp.* v. *Commonwealth, supra,* construing paragraph (i) of Acts 1928, ch. 374, at p. 993, dealing with the claims of lienors, and requiring proof "to the satisfaction of the court" of the same facts as now required by Code § 4-56 (i), as well as proof that the lienor had no reason to believe or suspect that the owner had ever been suspected of violating any prohibition law, it was held:

"The discretion given by statute to trial judges in matters of forfeiture is wide but not unfettered, and must rest upon the record." 159 Va. at p. 1008, 167 S. E. at p. 375.

In that case three law enforcement officers testified that the owner's reputation as a violator of the prohibition laws was bad, but the court said: "There is no doubt as to how he stood in police circles, but the finance company, although it maintained an office in Petersburg, is not charged with such knowledge. It was not required to question the police or to examine the records of criminal courts. The reputation

with which it can be charged is general reputation, and general reputation is that which is common knowledge in his community." 159 Va. at p. 1008, 167 S. E. at p. 375.

It was held that the evidence did not show that the owner's reputation was such that knowledge of it could be imputed to an ordinary business man in Petersburg, where the sale was made. "That, in the absence of actual knowledge, is necessary." 159 Va. at p. 1008, 167 S. E. at p. 375. The opinion concluded:

"This finance company had no actual knowledge, and no constructive knowledge which could put it upon notice, and so was required to make no independent investigation." 159 Va. at p. 1009, 167 S. E. at p. 376.

In *Patterson v. Commonwealth*, 187 Va. 913, 920-21, 48 S. E. (2d) 357, 361, reversing a judgment of forfeiture for illegal use, we said:

"The statute puts upon the claimant the burden of satisfying the court that he was ignorant of the illegal use of his car, and that such use was without his connivance or consent, express or implied. But this does not mean that perfect or complete proof of innocence is required. The degree to which the proof ought to satisfy the court need be reasonable only. Mere possibilities or mere speculation are not to be allowed to overcome uncontradicted evidence of actual facts. A conviction of bad faith on the part of the claimant should be based upon some evidence of his criminal knowledge, consent or connivance to the unlawful use of his vehicle, or upon circumstances from which there may be fairly inferred such knowledge or consent." This statement was quoted and approved in *Cleek v. Commonwealth*, 189 Va. 14, 21, 52 S. E. (2d) 89, 92.

The Commonwealth relies on *Bandy v. Commonwealth*, *supra*, 185 Va. 1044, 41 S. E. (2d) 71. The facts of that case distinguish it from this. There Mr. Justice Spratley, who also wrote the opinion in the *Patterson* case, pointed out the circumstances which required from the lienor an explanation which he did not supply. They included the

fact that the lienor was the owner's attorney, and was also judge of a court in the community in which the owner lived and where he widely bore the general reputation of being "a big shot" in the illegal whiskey traffic, and the lienor knew he was so engaged before the car was seized. Distinguishing facts likewise appear in *Wray* v. *Commonwealth*, 191 Va. 738, 62 S. E. (2d) 889, in which a forfeiture was affirmed.

There is no suggestion in this case of connivance or express consent. The appellant can be charged with implied consent only if Gorham's reputation was such that appellant is conclusively presumed to have had knowledge of it. It is true that if appellant had questioned the police, or at least the police who testified, it would have learned that Gorham had a reputation of being a bootlegger and had been twice convicted of possessing illegal whiskey. But appellant was not required to question the police or to examine the records of the criminal courts. *Myown Development Corp*. v. *Commonwealth, supra*.

It is also true that the investigations made by the appellant and its assignors were not complete and thorough, but the evidence does not indicate that they were not made in good faith or with eyes closed to what should have been seen. As was said in *One International Truck* v. *Commonwealth*, 159 Va. 1010, 1013, 167 S. E. 376, 377, where the sales agreement was followed only by routine inquiries as to the solvency of the purchaser:

"It was an ordinary sale made in an ordinary way after an ordinary investigation of the would-be purchaser. It is entirely possible such use was always contemplated, but there was nothing to put the vendor on notice or to excite its suspicion. Certainly it would be unreasonable to require the International Harvester Company to look into the possible 'bootlegging' activities of all customers—undercover work which many of them would resent. * * *."

It does not appear from the evidence that Gorham's reputation was such that it must be presumed that the appellant

knew about it. While one of the officers was asked whether he knew Gorham's general reputation, his answer was that he was a known violator. The fact that he was a known violator to this officer, or even in police circles, did not necessarily establish that it was a matter of common knowledge in the community. Unless it was a matter of common knowledge then appellant is not charged with knowing it. It cannot fairly be said from this evidence that Gorham's reputation was so well known as to convict the appellant of having knowledge of it as against its positive evidence that it did not have such knowledge.

The judgment of the trial court should not be set aside unless it appears from the evidence that it is plainly wrong or without evidence to support it. Code § 8-491; *Bandy* v. *Commonwealth, supra,* 185 Va. at p. 1052, 41 S. E. (2d) at pp. 74-5. But in our opinion the evidence proves that the appellant is an innocent lienor as defined by the statute and that its lien should have been established.

Appellant also assigns error to the adverse ruling of the trial court on its contention that there could be no forfeiture of the automobile after Gorham was acquitted of illegally transporting whiskey in it. Since we hold that the appellant is an innocent lienor it is not necessary to discuss this additional assignment even if it had more merit than we now think it has.

The judgment below is reversed and final judgment will be entered here directing that the automobile be delivered to the lienor, the evidence being that its lien is more than the value of the vehicle, and the costs shall be paid by the Commonwealth. Code § 4-56 (i).

*Reversed and final judgment.*